## STATE OF FLORIDA v. BRUNK
### Case No. TE81-9418 & TE81-9419
County Court, Orange County
March 10, 1982

Joseph A. Cocchiarella, Assistant State Attorney, for plaintiff.

Randi Chavis, Assistant Public Defender, for defendant.

JAMES C. HAUSER, County Judge.

This cause came to be heard before this Court on January 29, 1982, and February 12, 1982, on the Defendant's Motion to Suppress the Results of a Breathalyzer Test administered to the Defendant, THAD E. BRUNK.

The Defendant had been arrested for both the offense of UBAL[1] and DUI[2]. The offense of UBAL consists of driving when having a blood alcohol level which equals or exceeds .10%. Florida Statute 322.261(2)(c). An individual whose blood alcohol level equals or exceeds .10% is presumed to be driving under the influence of alcohol to the extent that his normal facilities are impaired. Florida Statute 322.262(2)(c). The Defendant's blood alcohol level was .19%.

The State stipulated with the Defendant that a breath sample could independently be preserved outside the breathalyzer machine by use of

---

[1]Unlawful Blood Alcohol Level, 316.193(3)

[2]Driving under the Influence of Alcohol or Drugs to the extent that normal facilities were impaired, 316.193(1)

a device known as an indium crimper (T p. 7, L 8-11)[3] and that the indium crimper device has been certified as being sufficiently accurate by the Department of HRS (T p. 10, L 15-17).

Both parties essentially agree that the cost of purchasing an indium tube would range from $9.50 (T p.95, L 19-22) of which $5.00 was recoverable, to $13.50 of which $1.60 was recoverable. In addition, the cost of producing the crimping device would be $300 for each unit and that three units would be needed. There, of course, would be a cost for storing the indium crimpers, once the breath was preserved, but this cost was never quantitated by either side.

Dr. Wingeleth testified that any officer who could operate the breathalyzer machine could also operate the indium crimpers (T p. 135, L 3-16); however, the procedures to be utilized were never discussed. One item of great concern to the Court is that if there was a variance between the crimper and the breathalyzer machine, there would be no possible way to determine which device had malfunctioned (T p. 140, L 16-28; p. 141, L 1-2). Essentially, even if this Court were to require breath samples, if there were a variance, a jury would have no way of knowing which machine was operating correctly.

Both parties agree that an individual's breath is necessarily totally consumed in the testing process by the breathalyzer machine. Thus, once the test is given, there is no way to independently test defendant's breath to determine that the breathalyzer reading was inaccurate.

Defendant's fear is that the breathalyzer machine is less than 100% accurate. The record was in conflict on this point. Dr. Wingeleth testified that it is accurate 95% of the time (T p. 54, L 1-28) within a range of .005%. Bob Bickley, the Orange County breathalyzer operator, testified that using the same .005% tolerance level, the machine has been accurate 100% of the time during the past two years. One possible explanation for this variance is that Dr. Wingeleth compared his results to blood tests and Bob Bickley did not. It was suggested that Colorado's altitude may have affected the results. One thing is clear, however, the best possible way to measure the blood alcohol level is by the blood test, not by a breathalyzer machine. (T p. 144, L 22-25).

There is other evidence to indicate Defendant's concern regarding the accuracy of the breathalyzer machine is not far fetched. The machine is based on a ratio of 2100 parts of air to one part alcohol. The 2100-1 ratio is an average for the population (T p. 20, L 10-28); some have a

---

[3]T = Transcript of Court proceeding on January 29, 1982

P = Page of Transcript

L = Line

higher ratio, others a lower ratio. The greater the deviation from the 2100-1 ratio, the greater the likelihood the results will be inaccurate.

Further evidence of the fallibility of the breathlyzer machine was recently published in an article entitled *The Single Chemical Test for Intoxication: A Challenge to Admissibility*, 24 Mass. Law Review 23 (1981); Fitzgerald and Hume. The authors concluded that the machine's accuracy was questionable because:

a. it failed to take into account physical deficiencies of the individual tested,

b. it failed to distinguish between the type of alcohol consumed,

c. it failed to consider when the defendant last ingested food, prior to the intake of alcohol, and

d. it failed to indicate when the alcohol was consumed.

California, as a way of avoiding this problem, requires two breathalyzer readings. Cal. Ad. Code Title 17, §1221.4(a)(1). It is not unusual for these two samples to be substantially different. For example, in *Hasiwar v. Sillas*, 173 Cal. Reptr. 358 (C.A. 2nd Dist., Div. 3, 1981), the difference between the two samples was 50%. *Hasiwar, supra,* proves, if nothing else, the breathalyzer machine is not infallible.

## LEGAL ARGUMENTS

The Defendant has raised five legal grounds why the State should be required to preserve a second breath sample for independent testing.

I. Florida Rules of Criminal Procedure 3.220

II. Article I, Section 2, of the Florida Constitution

III. VI Amendment of the United States Constitution, cross examination

IV. Article I, Section 9, of the Florida Constitution, due process clause

V. V Amendment of the United States Constitution, due process clause

The failure of the State to take an additional breath sample does not violate the Florida Rules of Criminal Procedure. Rule 3.220(a) states:

After the filing of the indictment or information within 15 days after written demand by the Defendant, the Prosecutor shall disclose to defense counsel and permit him to inspect, copy,

test and photograph the following information and material *within the State's possession or control . . .*

>   (vi) any tangible papers or objects which were obtained from or belonged to the accused.

(Emphasis added)

Rule 3.220 is a rule of discovery. Upon demand, the State is required to disclose to the Defendant any information it possesses. In the case at bar, the Defendant's breath is totally consumed by the testing process. Since the State neither possesses nor controls the Defendant's breath, Rule 3.220 of the Rules of Criminal Procedure is inapplicable.

The Defendant has relied upon *State v. Johnson,* 249 So.2d 470 (Fla. 3rd DCA, 1971) cert. den. 280 So.2d 673 (Fla., 1973). In that case, the State attempted to introduce the testimony of a ballistics expert when the bullet taken from the deceased was lost by the State. The Third DCA ruled essentially that the failure of the State to permit the Defendant to independently examine the bullet violated Rule 1.220 (now Rule 3.220) of the Florida Rules of Criminal Procedure. However, in *Johnson,* the State was in *possession* of the bullet and lost it in the case at bar, the State did not lose the breath sample, because it never possessed it.

The Florida Appellate courts seem to agree that Rule 3.220 does not require the State to preserve evidence, when the testing of such evidence will necessarily destroy it. *Stipp v. State,* 371 So.2d 712 (Fla. 4th DCA, 1979) at p. 714; *State v. Herrera,* 365 So.2d 399 (Fla. 3rd DCA, 1979) at p. 401. Both courts strongly recommend the present criminal rule be amended to at least permit the defendant to observe the testing process. However, until it is amended, it is this Court's opinion that Rule 3.220, Rules of Criminal Procedure, does not require an independent breath sample.

## II

Article I, Section 2, of the Florida Constitution, states:

>   SECTION 2. Basic Rights.—All natural persons are equal before the law and have inalienable rights, among which are the right to enjoy and defend life and liberty, to pursue hapiness, to be rewarded for industry, and to acquire, possess and protect property; except that the ownership, inheritance, disposition and possession of real property by aliens ineligible for citizenship may be regulated or prohibited by law. No person shall be deprived of any right because of race, religion or physical handicap.

The Defendant claims that rebuttal evidence is necessary to protect one's liberty. The Defendant has cited no authority that the failure to present rebuttal testimony would violate this constitutional right. If such a position does exist, the argument would seemingly be either a denial of effective cross-examination (III) or denial of fundamental due process (IV) and (V). Therefore, the Defendant's Motion to Suppress based on Article I, Section 2, of the Florida Constitution, is denied.

## III

The failure to preserve the breath sample does not violate that VI Amendment of the United States Constitution. The VI Amendment states:

> In all criminal prosecutions, the accused shall be confronted with the witnesses against him.

The Defendant claims that without being able to independently test the breathalyzer machine, there is no possible way to effectively cross examine the results of the breathalyzer tests. This is especially crucial when the Defendant is charged with having an unlawful blood alcohol level, since in that situation, the *only* evidence which may convict the Defendant is the Defendant's breathalyzer result. A number of courts, recognizing that a cross examination of the operator of the machine is not the same thing as cross examining the machine itself, have adopted this position.

In *Wisconsin v. Booth,* 295 NW2d 194 (Ct. of App., Wisc., 1980), the Court stated at p. 198:

> The witness whose reliability is crucial in this instance is not the officer who administered the test. The key witness is the breathalyzer machine itself. Cross examination of the officer can only reveal whether he correctly followed the proper procedure in operating the machine. Whether the machine was capable of correctly determining the amount of alcohol in the Defendant's system can only be persued by an analysis of the ampule's contents.

Florida Courts, however, have determined that the VI Amendment constitutional right to cross examine applies only to witnesses, not physical evidence. *G.E.C. v. State,* 389 So.2d 325 (Fla., 5th DCA, 1980); *State v. Armstrong,* 363 So.2d 38 (Fla. 2nd DCA, 1978); *State v. Atkins,* 369 So.2d 389 (Fla. 2nd DCA, 1979). That being the case, this Court is legally required to rule that failure to preserve the breath sample does not deprive the Defendant of his VI Amendment right to cross examine.

The Defendant has relied upon the case of *Cook v. State,* 80-1276-AP-01, an appellate decision of the Circuit Court of Sarasota. *Cook's* basis for requiring the State to preserve a breath sample is based in large part on the defendant's right to effectively cross examine witnesses. Since Sarasota is in the 2nd DCA and the 2nd DCA has twice ruled that there is no VI Amendment right to examine physical evidence, *Armstrong, supra,* and *Atkins, supra,* this particular basis for the *Cook* decision must be considered legally questionable.

## IV and V

The failure of the State to preserve breath samples does not deprive the Defendant of his right to due process of law under either the V Amendment of the United States Constitution or Article I, Section 9, of the Florida Constitution.

The V Amendment to the United States Constitution states:

No person shall . . . be deprived of life, liberty or property without due process of law.

Article I, Section 9, of the Florida Constitution states:

No person shall be deprived of life, liberty or property without due process of law.

a. As previously discussed, all of the Defendant's breath is necessarily consumed by the breathalyzer machine. When the testing process necessarily, but unavoidably destroys evidence, such destruction does not violate the Defendant's due process rights. *State v. Herrera,* 365 So.2d 399 (Fla. 3rd DCA, 1978); *State v. James,* 404 So.2d 1181 (Fla. 2nd DCA, 1981); *State v. Atkins,* 369 So.2d 389 (Fla. 2nd DCA, 1979).[3] See also dicta in *Stipp v. State,* 371 So.2d 712 (Fla., 1979).

*Herrera, supra,* is typical of the above cited cases. In that case, the defendant was charged with possession of heroin. The amount of heroin was so minute that it was apparent that any testing of the substance would necessarily destroy the evidence. Unlike the case at bar, it would have been easy for the State to notify the defendant so that the defendant could have independently observed the testing process. However the defendant was never notified. Even though the 3rd DCA was highly critical of this practice, it nevertheless ruled that such practice was not a violation of the defendant's due process rights.

[3]Contra, *Tenn v. Gaddis,* 530 SW2d 64 (Tenn., 1975); *People v. Gomez,* 596 P2d 1192 (Colorado, 1979) citing as authority *Garcia v. District Court 21st Judicial District,* 589 P2d 924 (Colo., 1979).

The Defendant's reliance on *Stipp v. State, supra,* is factually distinguishable from the case at bar. In that, the defendant was accused of possession of cocaine. The State had in its possession 150 grams of the cocaine, of which only 10-50 grams would be necessary to complete the test. For some unexplained reason, the chemist used all of the cocaine in the testing process, although it was *unnecessary* to do so. In the case at bar, the stipulated facts are that the breathalyzer test *necessarily* and unavoidably consumes all of the Defendant's breath, thus making *Stipp* inapplicable.

The Sarasota Appellate Circuit Court decision, *Cook v. State, supra,* seemingly relied upon the due process issue as grounds for requiring the State to secure breath samples. This Court believes that since *Cook* is bound by the 2nd DCA opinions of *State v. Atkins, supra,* and *State v. James, supra,* that said reliance is without legal merit.

b. Even if this Court were not bound by *Herrera,* et al., it would still rule that due process does not require the State to take independent breath samples of the Defendant's breath.

The Defendant has relied upon the case of *Garcia v. District Court 21st Judicial District,* 589 P2d 924 (Colo., 1979) and *Baca v. Arizona,* 604 P2d 617 (Ariz., 1980), that the State is required to preserve independent breath samples. Both cases cited *U.S. v. Bryant,* 429 F2d 612 (U.A. C.A. D.C., 1971) as authority. This Court disagrees with their analysis.

In *Bryant, supra,* the police made a tape recording of the Defendant purchasing drugs. The police inexplicably destroyed the tape. The Defendant claimed that the tape would have exonerated him. In reversing the trial court, the court stated at p. 651:

> It is most consistent with the purposes of those safeguards to hold that the duty of the disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question. *Otherwise, disclosure might be avoided by destroying vital evidence* before prosecution begins or before defendants hear of its existence. Hence we hold that before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later. (Emphasis added).

*Bryant, supra,* was afraid that the State might avoid its constitutional duty of disclosing evidence favorable to the defendant by simply destroying it. The result would be an easy way for the police to circumvent the requirements of *Brady v. Maryland,* 373 US 83, 10 L.Ed2d 215, 83 S.Ct. 1194(1963). There is no such danger in the case at bar, however,

since even the most dishonest of policeman cannot destroy evidence which he does not possess.

In order to properly understand this due process issue, it is important to review *Brady v. Maryland, supra,* and subsequent decisions. In *Brady,* the defendant demanded by discovery any oral statements that might exonerate him. The prosecution withheld information which would have affected the defendant's sentence. In reversing the sentence, the Supreme Court adopted the following test at p. 87:

> We now hold that the suppression of evidence by the prosecution of evidence favorable to an accused, upon demand, violates due process where the evidence is material either to guilt or punishment, irrespective of the good or bad faith of the prosecution.

This legal position was further explained in *U.S. v. Agurs,* 427 U.S. 97, 49 L.Ed2d 342, 96 S.Ct. 2392(1976), which incidentially was decided after *U.S. v. Bryant,* at p. 104:

> A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.

In the case at bar, the State has not suppressed evidence, rather it has failed to obtain additional evidence which might aid the Defendant. To require the State to obtain this additional evidence is not mandated by *Brady* or *Agurs.* To constitutionally require the State to obtain additional evidence solely for the defense would be nothing less than creating a judicial quagmire.

The disasterous consequences of setting such a precedent was expressed in *People v. Miller,* 215 Cal. Reptr. 341 (Cal. 1st Dist. Div. 3, 1975) at p. 343:

> If all evidence which can be made demonstrative *must* be so transformed, we shall encounter problems with extra judicial declarations which with fortuitous foresight, would have been tape recorded, and eyewitness observations of events which could have been photographed.

Were this Court to allow the Defendant to suppress the breathalyzer in this case, it would be opening up a Pandora's box. For example, the State of Alaska, which requires the State to preserve the ampules, *Lauderdale v. Alaska,* 548 P2d 376 (Alaska, 1976), has had to decide whether the State should:

a. preserve and produce the direction and position of fingerprints, *White v. Alaska,* 577 P2d 1056 (Alaska, 1978).

b. preserve a furnace and tire which the murder bullet eventually embedded itself into, *Nicholson v. State,* 570 P2d 1058 (Alaska, 1977).

c. produce photographs which, when developed, were blank. *Catlett v. Alaska,* 585 P2d 533 (Alaska, 1979).

In conclusion, this Court rules that the Rules of Criminal Procedure, the Florida Constitution, and the United States Constitution do not require the State to preserve an independent breath sample.[4]

---

[4]This Court, however, does believe public policy does require the legislature to amend the present Florida Statute to either require a second breathalyzer test or an independent breath sample.

At the very least, Florida Statute 322.261(2)(c) should be amended to obligate the State to give the Defendant an independent test if he requests one. Compare *Turpin v. Texas,* 606 SW2d 907 (C.A. en banc Tex., 1980) with *State v. Young,* 614 P2d 441 (Kan., 1980).